IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JINA YVONNE MCDANIEL,

        Plaintiff,

v.

                                               No. 16-cv-00496 KRS

NANCY A. BERRYHILL, Acting Commissioner
of the Social Security Administration,

        Defendant.

**OPINION AND ORDER GRANTING MOTION TO REVERSE AND/OR
REMAND AND REMANDING TO AGENCY FOR FURTHER PROCEEDINGS**

Plaintiff Yvonne McDaniel seeks review of the Social Security Administration's decision concluding she is not disabled under Sections 202(e), 223(d), and 1614(a)(3) of the Social Security Act, 42 U.S.C. §§ 402(e), 423(d), 1382c. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. §636(c)(1); Fed. R. Civ. P. 73(b), the Court has considered McDaniel's motion to reverse and/or remand [Doc. 17], the Commissioner's response in opposition [Doc. 21], McDaniel's reply [Doc 24], as well as meticulously reviewed the administrative record. The Court now grants the motion and remands the matter to the agency for further proceedings.

                I.    FACTUAL BACKGROUND

                    **A.  Plaintiff's History**

McDaniel is now 55. At the time of her alleged disability onset date, December 6, 2004, she was 44 years old,[1] and by the time the ALJ rendered his decision, McDaniel was 53. In social-security parlance, McDaniel is a "person closely approaching advanced age." 20 C.F.R. §

---

[1] Because Disabled Widow's Benefits are not available until the surviving spouse turns 50, McDaniel could not have obtained them until, at the earliest, November 1, 2010, her 50th birthday.

404.1563(d) (requiring consideration of age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work").

McDaniel completed only the sixth grade and gave birth to her daughter, Kymberly, when she was 15. She married Johnnie McDaniel at that age, and the two remained together until his death from liver cancer in 2004. Kymberly lives with McDaniel at McDaniel's home and according to McDaniel, takes care of her. McDaniel has limited work experience, most recently as a housecleaner and previously as a sales clerk. She has not sought employment since before Johnnie died because of her limited education as well as physical and mental difficulties.

After her husband died, McDaniel was diagnosed as suffering from agoraphobia. She further lists "generalized anxiety disorder with panic attacks, depression, irritable bowel syndrome, chronic headaches, and significant back pain" as preventing her from obtaining and maintaining employment.

### B. Procedural History

On November 14, 2011, McDaniel filed an application for Disabled Widows Benefits as well as a prospective application for supplement security income. McDaniel alleged a December 6, 2004 onset date, the day her husband died. The applications were denied both initially and on reconsideration. On May 8, 2014, Administrative Law Judge Michael S. Hertzig conducted a hearing pursuant to McDaniel's request for review. McDaniel appeared *pro se* with her daughter, Kymberly. Both testified during the 30-minute hearing. The ALJ issued a written decision on June 16, 2014 denying benefits because McDaniel "has not been under a disability within the meaning of the Social Security Act at any time through the date of this decision." On March 25, 2016, the ALJ's decision became the Commissioner's when the Appeals Council denied

McDaniel's request for review. McDaniel filed the instant complaint in this Court on May 27, 2016 seeking reversal of that determination.

## II. STANDARD

This Court reviews the agency's decision to determine whether it is supported by substantial evidence and the agency applied the correct legal standards. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If substantial evidence supports the conclusion that the plaintiff is not disabled and the ALJ followed the correct legal standard, the plaintiff is not entitled to relief. *See Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). The term "substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1118 (citation and internal quotation marks omitted). The Court may not, however, re-weigh the evidence, try the issues *de novo*, or substitute its judgment for Commissioner's. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Even if the Court could reach the opposite conclusion, the decision must stand if the record as a whole is not "overwhelmed by other evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

## III. ANALYSIS

### A. <u>Disability Framework</u>

The Court's main task in reviewing the ALJ's decision is to determine whether the plaintiff is disabled as defined under the Social Security Act. "Disability" under the Act is a plaintiff's inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). As here, when the plaintiff's application is denied initially and on reconsideration, the ALJ employs a five-step sequential analysis to evaluate disability. Steps one through four require the plaintiff to prove (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable" "impairment" "or a combination of impairments" that either has lasted or is expected to last at least one year; (3) the plaintiff's alleged impairments meet or equal one of the presumptively disability impairments the agency has listed; and (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv). At Step 5, the Commissioner must show the plaintiff retains the residual functional capacity ("RFC") to perform work in the national economy in light of her age, education, and work experience. *See Grogan*, 399 F.3d at 1261.

### B. The ALJ's Determination

In evaluating McDaniel, the ALJ concluded that she has not engaged in substantial gainful activing since December 6, 2004 (step I). Further, the ALJ found McDaniel suffered from "affective disorder [and] anxiety order" as "severe impairments," but that her claimed headaches, irritable bowel syndrome, and hypertension were "non-severe" (step II). At step III, the ALJ considered the digestive system (Listing 5.01), mental disorders (Listing 12.01), affective disorders (Listing 12.04) and anxiety related disorders (12.06) in deciding McDaniel did not have an impairment that met or equaled a listing. The ALJ reasoned that McDaniel did not satisfy the listings criteria because, he found, she had mild restriction of her activities of daily living, moderate difficulties with social functioning, no deficits with concentration, persistence or pace, and had no episodes of decompensation for an extended duration.

The ALJ next determined that McDaniel had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: [McDaniel] is able to

interact with the general public on an occasional basis." In reaching the foregoing conclusion, the ALJ found the "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [McDaniel's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]"

At step IV, the ALJ found that McDaniel had no past relevant work. Nonetheless, the ALJ determined she could perform jobs that existed significant numbers in the national economy. Ultimately, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act," from the alleged onset date through the date of the decision.

### C. Challenges to the ALJ's Decision

McDaniel assigns two errors to the ALJ's determination that she is not disabled under the Social Security Act. First, McDaniel insists the ALJ incorrectly rejected the contrary opinions of her treating providers. Second, McDaniel claims the ALJ improperly cherry picked from the medical opinions he did rely on to reach his ultimate conclusion. The Court agrees in part with the first argument and does not reach the second.

#### 1. *The ALJ's rejection of treating sources*.

McDaniel submitted opinions from three medical providers, Nurse Practitioner Edith Iwan, Monique Gibson, MD, and Nurse Practitioner Clarissa Juarez. Iwan asked that McDaniel be "consider[ed] for disability because [her] health conditions make working for her very difficult." According to Iwan, McDaniel "has extreme anxiety and agoraphobia and is unable to drive a car so that going out for a job for 8 hours would be impossible." On the physical side, Iwan stated McDaniel suffers from "chronic daily headaches, irritable bowel syndrome, chronic lumbar pain, hypertension, and insomnia[,] [and] [a]ll of these conditions make concentrating on job skills in a work setting very difficult."

Dr. Gibson opined that McDaniel has "chronic pain syndrome and generalized anxiety disorder with agoraphobia," which she characterized as "severe and incapacitating, and currently not well controlled." Dr. Gibson further suspected McDaniel has "some underlying PTSD," explained McDaniel was set for follow up treatment with a "Psychiatric Practitioner," and would be monitored monthy. Dr. Gibson concluded "Ms. McDaniel is disabled and unable to be gainfully employed, indeed she is unable to partake in normal social activity."

Dr. Gibson submitted other correspondence explaining "McDaniel is currently stable," though she "has difficulty leaving her home without her daughter accompanying her."[2] Dr. Gibson confirmed McDaniel "has been unable to be gainfully employed during [the year she has been under Gibson's care] due to her agoraphobia," which Dr. Gibson said "is unlikely to resolve." Practitioner Juarez concluded McDaniel's "symptoms would interfere significantly with any attempt to maintain employment." Juarez also indicated that McDaniel was receiving psychiatric services, including therapy, taking medication, and would be "monitored and assessed routinely."

The Court agrees with the ALJ that these statements are largely conclusory and some improperly touch on the ultimate issue reserved to the Commissioner, whether McDaniel is disabled. *See* Soc. Sec. Rul. 96-5p, 1996 SSR LEXIS 2, at *6, 1996 WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). The Court is also cognizant of what appear to be inconsistencies in the record about McDaniel's limitations. The problem is, however, the ALJ neither sought clarification from these treating sources nor adequately explained why he afforded them only limited weight. These two errors require remand.

---

[2] The Court also recognizes that Dr. Gibson's second report was not available to the ALJ. On remand, the agency may fully consider it.

### a. Obligation to follow up with medical providers

There is little doubt that "[a] social security disability hearing is nonadversarial," meaning the ALJ has a duty to both ensure "an adequate record is developed" and obtain "pertinent, available medical records, which come to his attention." *Maes v. Astrue*, 522 F.3d 1093, 1096-1098 (10th Cir. 2008). As part of the non-adversarial process, "the ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled." *Maes*, 522 F.3d at 1097; *Vigil v. Astrue*, 2008 U.S. Dist. LEXIS 43728, *3, 2008 WL 2275458 (D. Colo. June 3, 2008) (explaining "[t]he treating physician . . . must be re-contacted when there is a conflict or ambiguity in the medical source reports"). This obligation takes on a greater significance when a plaintiff is unrepresented, as was McDaniel during the administrative proceedings. *See, e.g.*, *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987).

Although the Court is concerned with what appears to be some record evidence of McDaniel's ability to do some of activities the three sources say she cannot, this conflict only underscores the need for the ALJ to seek clarification, especially because McDaniel was not represented in the administrative phase. To the extent the treating sources simply conclude disability, the ALJ should develop the record as to why. Where the treating sources make unsupported conclusions, the ALJ needs to understand the bases to fully assess disability. On remand, the agency must re-contact these providers. Without this information, the Court is unable to assess the propriety of the ALJ's determination that McDaniel is not disabled.

### b. Assessing treating medical sources

The "treating physician rule" requires the ALJ to give controlling weight to the opinions of these medical sources unless their assessments are unsupported by medically accepted

laboratory and diagnostic techniques *or* inconsistent with other substantial evidence in the record. *See Langley*, 373 F.3d 1116, 1119 (10th Cir. 2004). Even if either aspect is deficient—and the treating physician's opinion is not entitled to controlling weight—the provider is still entitled to deference[.]" *Id.* The ALJ must make a specific finding as to the deference or weight to which the opinion is entitled by examining the following factors: (1) "the length of the treatment relationship and examination frequency"; (2) "nature and extent of the treatment relationship"; (3) the extent to which the provider's opinion "is supported by relevant evidence"; (4) "consistency between the opinion and the record as a whole"; (5) whether the provider "is a specialist in the area upon which an opinion is rendered"; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* The ALJ must give "good reasons," sufficiently specific for purposes of subsequent review, "for the weight assigned to the treating source's medical opinion and the reason for that weight." *Id* (citation omitted). To reject an opinion outright, the ALJ "the must then give specific, legitimate reasons for doing so." *Id.* (citation omitted).

Contrary to McDaniel's suggestion, the ALJ did not completely reject Iwan, Gibson, and Juarez's observations. Instead, he afforded them little weight. In so doing, the ALJ identified inconsistencies in the record. He explained that "[t]reatment notes do not support the frequency of treatment or degree of symptomatology." For example, McDaniel's counselor reported she had only attended 11 sessions between 2009 and 2011. Additionally, McDaniel herself reported at times that her anxiety symptoms improved and at one point "pulled herself together and was doing things." In fact, other providers commented she refused additional therapy because McDaniel felt she was doing better and did not need it. In consultative examinations, McDaniel related that her medications assisted with her anxiety and agoraphobia; Excedrin helped alleviate

headaches; she was able to dress herself, feed herself, cook, do dishes, go shopping and climb stairs; she could walk a hundred yards and sit for twenty minutes; and McDaniel had an active driver's license and drove.

Problematically, however, the ALJ did not tie the inconsistencies to any provider except Iwan. Consequently, Dr. Gibson's assessment is entitled to controlling weight[3] as is Practitioner Juarez's because the record does not reflect how the conflicts relate to their diagnoses and prognoses and the ALJ made no comment as to medical acceptability of any diagnostic techniques. *See Langley*, 373 F.3d 1119 (a treating source opinion is entitled to *controlling* weight unless unsupported by substantial evidence in the record or medically unacceptable). This omission is fatal. The Court may not undertake this task for the Commissioner, even though there is a plausible argument that McDaniel could sustain gainful employment. *See id* (requiring the *ALJ* to follow the correct legal standards). Regardless, and even if the Court engaged in a harmless error analysis, the ALJ should have had contacted these providers as explained above for additional information to understand the inconsistencies better and for this Court to have a complete record for review.

In terms of Iwan, the ALJ was permitted to move to the next step and afford her opinion some degree of significance other than controlling weight. He was required, however, to examine the six factors in 20 C.FR. § 404.1527 in affording Iwan's assessment "little" weight. The ALJ did not fully do so.

---

[3] The Court, of course, recognizes that Dr. Gibson and Practitioner Juarez's conclusions as to disability itself are not entitled to significant weight, and the ALJ made that point abundantly clear. The ALJ, however, failed to recognize that the opinions included information beyond a simple ultimate conclusion such that the remainder is entitled to controlling weight. For example, aside from opining McDaniel "is disabled," which can and should be disregarded, Dr. Gibson also identified chronic pain syndrome and generalized anxiety disorder with agoraphobia, and possibly post-traumatic stress disorder, as medically determinable impairments. She indicated that she had referred McDaniel to a psychiatric practitioner, and would be "following [McDaniel] closely on a monthly basis. " Finally, Dr. Gibson indicated McDaniel "is unable to partake in normal social activity.".

Although the ALJ did note many inconsistencies with the record and the conclusory nature of Iwan's opinion, which speak only to factors three and four regarding support for the assessment and consistency, he did not give implicit or explicit consideration to the remainder, including McDaniel's treating relationship with Iwan, its nature and length, as the regulations require. The failure to give a complete analysis means the ALJ did not provide a complete basis for the Court to review his decision to afford little weight to Iwan's opinion.

### 2. *The ALJ's reliance on other medical opinions*

McDaniel asserts that the ALJ improperly cherry picked from the remainder of the medical evidence in arriving at his conclusion that she is not disabled. The Court finds it unnecessary to reach this additional claim, since the claim may be affected by the findings on remand. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (declining to reach the plaintiff's step five claims because they may be affected by resolution of the case on remand)

### IV. CONCLUSION

For the reasons stated above, the Court concludes that the Commissioner's decision should be remanded for additional consideration consistent with this opinion. Accordingly, it is **ORDERED** that McDaniel's Motion to Reverse or Remand [Doc. 17] is **GRANTED** and this matter is **REMANDED** for additional proceedings consistent with this decision.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent